The last case this morning is Cloud of Change v. Lightspeed Commerce & Clover Network, 12-24-1446-48-1547. Mr. Selinger, when you're ready. Good morning, and may it please the court. Reversal of the Wojciech-based rejections is warranted for three reasons. First, the board engaged in improper claim construction. Second, Cloud of Change preserved its right to challenge those improper constructions. Third, the board's incorrect constructions caused harmful error. Let me start with the real-time term. The board construed real-time for a dependent claim in each patent. It did so after saying it had no reason to do any express claim construction. In addition, the board held that real-time aspect, quote, is accomplished by the store owner being able to implement the changes without the need for a skilled programmer, end quote. That common holding established the scope and meaning of at least one- That sentence- Pardon me? You believe that sentence is definitional? I mean, one argument, one way to read that sentence would be just that, you know, real-time, which is undefined, is accomplished by allowing someone to make these changes in a very easy way, or not as a- But do you see what I'm saying? I'm not sure it's definitional. So I hear what you're saying, Your Honor, but I believe it is definitional. Both sides understood real-time was, here we go, was instantaneous or immediate. And let me find the sides. That would be then if it's instantaneous, meaning, but that would mean that the updates, the changes that are made to the point of sale terminal occur as they're made, right? Is that what you think the right interpretation is? So both sides had taken that, a position like that, where they occurred without delay, instantaneous, without any built-in delay. And then we came, then we come to the district court supplemental claim construction order, which Lightspeed, without objection, moved to put into evidence and the board granted that. And that supplemental claim construction order defines the meaning of the real-time limitation. What page are you looking at in the appendix for that? So I'm looking at it. Give me a second because I have it here. So it appears at in the opinions at A24, A78 and A146. The definition of that. Where do you think the definition is on page A24? I'm sorry, that's where it was adopted. I'm looking in the. Yeah, I just want to know where you think the definition is. So the supplemental, I'm looking for the supplemental claim construction order itself is. And we're focusing on the interpretation of real-time. I want to know where you think the PTAB interpreted real-time. OK, so my answer, my answer there, Your Honor, goes back to the real-time aspect is accomplished by the store owner being able to implement the change without the need for a skilled programmer. And that that is a who definition, not a when definition. And in defining real-time to turn on who is doing it is just doesn't accord with the positions that either side took in the proceeding. Doesn't accord with how how the district court resolved their very modest dispute. O2 micro dispute on real-time in the supplemental claim construction order. So real-time is about making something happen without an intentional delay, which was Lightspeed's position and without a without a successive step, which was the district court's position. And ours, ours was very similar to the other two. But real-time, I don't think plain and ordinary meaning of real-time is any time a person that doesn't need a technical expert to help them. What about the language at page 839 up at the top? You know where it says what the petitioner contends about what how WOSIC meets this limitation, right? At the top, it says petitioner contends that a person of ordinary skill would understand WOSIC discloses and suggests iterative testing of POS screens in real-time using administrative tool. Because upon exiting the administrative tool, it prompts the administrator to save the changes, discard the changes. So a person of ordinary skill would understand that saving or discarding them discloses testing the screens iteratively and in real-time. So that's really more about timing than about who. And then again, then later, the same thing on page 841 is discussed. And it says, middle paragraph, WOSIC teaches the iterative real-time aspect of the claim because it is the administrator that iteratively makes the changes rather than waiting for a programmer. But then it says the changes are simultaneously in use and done remotely subsequently. So it's going beyond just, oh, it's a paragraph above. I'm sorry. WOSIC explains the tool saves all the changes and makes all the desired changes. So they're, you know, it's saved or discarded as they're made. So those are several different arguments, Your Honor. I guess I'm just trying to say, did the board, it's not clear to me, and I apologize for citing the wrong part of the opinion, which is the part you're relying on, actually, and I get that. But it seems to me that maybe the board was also relying on the fact that you make a change and then you save it and you can see the change. Well, so what the board did was it relied on two parts of paragraph 115 of Wojciech. And the one paragraph was about the second step of updating. So in Wojciech, the central server downloads to the local server component of 82. And then either when a local, when a terminal, a client goes quiet, at that point they download. So it wasn't, so it was a variable time under the first explanation. And then the second explanation, when they're talking about figure 12, that's figure 12 of Wojciech is about editing and repeated editing. What the board also said is when it points to the administrator, administrative function, it said nothing gets done until the user exits the administrator, administrative module. And at that time, the user is asked either whether to save or to discard. And if it's saved, it goes down to, again, the local server component for later entry. So, and that download, that second step download is variable in time depending on how busy the clients are. If they're constantly in use, then downloading doesn't happen all day. And, but go ahead. This is like a substantial evidence factual question, though. And I was just trying to figure out, and I understand your position. I was just trying to figure out, did the board, in fact, misinterpret real time as you're suggesting? Or did they understand it to mean, you know, that you make a change and then you see the change? And so the language I was referring to, I was trying to determine whether the board had the right understanding of real time, regardless of whether it's analysis and whether reference teaches real time is correct or not. It did not. It did not. Wojciech does not teach that real time functionality or process. And so the board was trying to fit what Wojciech did, which is sending it down to, from the central server to the local server component. And then when the client is idle. And this is for only sending it on when the client is idle. That's different than what our patent discloses and claim, our patents disclose and claim. And again, the board's language about the goal being to be able to make the change without the need for a skilled programmer, the board's discussion of the prosecution history about that doesn't fit into the mold of real time. We have dependent claims that separately treat that benefit. Dependent claims three and five of the 640 patent talk about the other benefit of being able to work without a skilled programmer. But this is just about real time. You're into your rebuttal time. I assume you want to save it. I do. I do want to save it, Your Honor. And to the extent I have not touched on an issue, I want to ask the court to rely on the briefs. Thank you. We'll do that. Mr. Gray. Good morning, Your Honors. May it please the court. Joseph Gray on behalf of Eppley's Lightspeed and Clover. The board carefully considered every argument that Cloud of Change timely raised below and invalidated or held unpatentable every challenge claim, most on multiple grounds. Cloud of Change's arguments below and on appeal relate primarily to this in-store server argument that you see in the briefs. The argument relates to what kinds of software is installed on Wojciech's point of sale terminal in the store. And to pick up where we just left off with real time, the claims that Cloud of Change challenged below as to the real time limitations were three dependent claims, one from each patent. There was claim four from the 640 patent, claim three from the 012 patent, and claim 16 from the 793 patent. Those claims talk about testing iteratively in real time or editing screens in real time, essentially. And the key point here about their real time arguments is that those arguments don't relate at all to the claim language of the claims they challenged. The real time editing and testing occurs at the web server level where a manager, for example, can log in through a computer to access this builder software and create and edit screens and review those screens, make sure that they're satisfied with the end results. And once they are satisfied with those results, they get transmitted, those changes get transmitted to the in-store terminals. So what happens on the inside of a POS terminal after it receives those changes really is of no moment to the claims that are challenged for real time. In the briefs, Cloud of Change also argues about what we call the network limitations. Before we move on to that, on the real time, they contend, I think, that Wojcik does not allow for updating a point of sale terminal unless it's idle. Is that how the board read or should have read Wojcik? No. So Wojcik does update in real time, at least as fast as is disclosed in the 640 patent. What the board did was for the testing claims, the board said that the real time aspect is accomplished by eliminating the need for a skilled programmer. If we look at appendix 167, the board makes this statement. This is the 793 final written decision. The board says the real time aspect is accomplished by the store owner being able to implement the changes without the need of a skilled programmer. And then it cites the 793 patent, but it corresponds to column 3 lines 25 through 37 of the 640 patent. And that's appendix 204. And the parenthetical there says the store operator will be able to edit, change, and test the screens within minutes in real time rather than working with programmers offline. So the board was making that statement saying that the real time aspect is accomplished by eliminating the skilled programmer. And the board understood what cloud of change argued at the hearing, which is this editing and testing process is iterative. And it can take place within minutes as opposed to taking place over the course of weeks as it used to take with a skilled programmer. Okay, I think I get all that. But in Wojciech, in the prior art reference, can't that only happen when the terminal is idle? No. So the changes in Wojciech are pushed from the web server automatically down to kiosk 16, which is our mapping of the POS terminal. So the POS terminal itself immediately receives, essentially immediately receives the updates. And then the screens in the self-order application are updated as soon as the customer is done using. So if the terminal is in use, like someone's placing an order, it waits until that customer is finished. And then it immediately updates those screens within that POS terminal. So the edited screens are received instantaneously. And then they're displayed as soon as the terminal becomes idle. It may not be real-time. Maybe I'm slowly ordering something when that download comes. Would that really be real-time if it takes a couple minutes until it can get displayed? It would, Your Honor, because the 640 patent, all the specifications here talk about certain different activities taking place in real-time. So, for example, the claims that were challenged below that have real-time, it's testing or editing screens in real-time. Wojciech teaches that. That's what the board found. Those activities are performed at the web server level. I'm not sure which claim Cloud of Change contends requires updating terminals in real-time. We don't believe there is one. But Wojciech does, as soon as practical, it does send those updates immediately, then updates the screens as soon as the terminal goes idle. And I would just note that that's precisely the disclosure in the 640 patent about how terminals are updated. It's neither the patent nor Wojciech will basically override a customer's use of the terminal while they're placing an order. But the fastest either patent discloses updating the terminal screens is after a customer's finish, when the terminal is idle. So the disclosures between the two patents are identical. And that only becomes relevant if there is a claim limitation that requires the terminals be updated in real-time or instantaneously. Two other points on that. Claim 16, the board's analysis claim 16 of the 793 patent. Can I ask a question? Absolutely. So I take it then that your point is that for the real-time limitation, just focusing, for example, on the representative patent claims, looking at Claim 4, but real-time with respect to Element D and Claim 1 was not challenged. That's correct. It was not challenged. The board did state that it was adopting all of the undisputed contentions from the petition. That was at Appendix 24, for example, in the 640 patent. The board cited. So it wasn't challenged below and it's not challenged on appeal. Well, it might be challenged on appeal, but it wasn't challenged below, is your view? For the independent claims, that's correct. There's a real-time element of it. It says build or edit said POS terminals in real-time. That was not challenged below. That's correct. The board cited the petition pages 23 through 26 and found that all of those contentions were undisputed. And in those contentions, we explained that OYCHIC allows you to make the edits iteratively in real-time. I mean, you're kind of flowing through this program where you can change the menus or change the items. And then when you're finished with all your edits and you're satisfied with the results, you hit save. And then that server automatically pushes all of those edits down to kiosk 16 in the store, which is the POS terminal in OYCHIC. None of that was disputed. And POS terminal, just briefly, that was another issue that was not disputed below. The petition mapped the claimed one or more POS terminals to kiosk 16. And the board found that was a POS terminal, kiosk 16, and that was undisputed. And Cloud of Change and its expert, in fact, admitted that kiosk 16-82 is a POS terminal. And in the briefing, there's an argument about the board equating, making up a term, kiosk 16-82. And the board explains that at 19 through 22 of the appendix and 25 to 30, two different figures in OYCHIC identify the same item, the same device as those two numbers. Figure 1 uses 16 and figure 3 uses 82. So 82 shows the software that's installed on that POS terminal. In the end, OYCHIC discloses for all the elements of these claims and challenge below or on appeal, OYCHIC has essentially the same disclosure as this patent. There's POS builder software that eliminates the need for a skilled programmer. It's running on a web server. You can iterate changes and review those changes in real time and then send those changes to the terminals instantly. And I would just note that on Judge Stark to your question about the updating of the terminals, I would just direct you to column 3, lines 9 through 23 of the 640 patent. That's appendix 204 where it says that all changes have to be submitted for final posting at a scheduled time. For example, the changes can take place after the present transactions are completed. Alternatively, they can take place at the end of the business day, during the night or the next day. And the 640 patent says typically screen changes will take place at the next application start at the beginning of a business day. So the 640 patent doesn't disclose overtaking the terminal to display the updated screens. And OYCHIC… But there's an undisputed definition of real time, right? I apologize? Isn't there an undisputed definition of real time based on the district court's interpretation? No, Your Honor. In this record, there was no dispute about the meaning of real time during the IPR. I understand. Did the parties adopt the district court's interpretation of real time for purposes of the IPR? No, Your Honor. Okay. No, so that… That it didn't have to be… The district court proceedings, that claim construction came after briefing was complete in the IPR. And Lightspeed's argument in the district court was based on disclaimer during the IPR about real time. So there was no dispute over plain and ordinary meaning. It was a disclaimer argument in the district court. So Lightspeed submitted the district court's supplemental claim construction because it did address an issue that had been briefed in the IPR, which was whether the preambles are limiting. And then at the hearing, Cloud of Change mentioned in passing that if the board adopts the district court's constructions, you know, it made an argument. But it never… Cloud of Change never asked for additional briefing, admitted that the real time issue had not been briefed in the IPR. And, in fact, at the hearing, Cloud of Change said that what real time means is that you're doing things within minutes, as opposed to overnight or the next day. So within minutes is, I think, what we can all agree in general is what real time means in the context of testing and editing in real time. The patent uses that term. It says it can be edited and tested within minutes in real time. Cloud of Change took that position. I believe the board… That's how the board understood the term when making the statements it did as referenced in Appendix 167. Thank you, Counsel. There are no further questions. Thank you, Your Honor. We request that the final written decisions be affirmed. Mr. Salinger has some rebuttal time. Thank you. First, Judge Stark, the answer to your question about Whitecheck is on page 1317, paragraph 115, where it says the server updates each client connected to it with the corresponding save changes when each client is idle. When Judge Stoll asked the question, and I didn't have the precise sites, the Cloud of Change took the position about the meaning of a plain and ordinary meaning of real time at Appendix 46869, a temporal limitation where a response immediately follows an action rather than occurring in stages over time. Lightspeed argued it meant instantly and without intentional delay. That's A2616. And the district court on that same page said plain and ordinary meaning where a system with steps that occurs sequentially over time is not in real time. As far as the independent claims are concerned, Lightspeed opened the door. We did not make an argument while the 640 briefing was on. Then Lightspeed wanted to file the supplemental order. We then filed a, in our SIR reply at 4468, we took to position that Whitecheck didn't meet claim one either. For the real time limitation. And we then had argument as counsel concedes where our lawyer referred to that opinion for all of them. And by the way, his in minutes question was actually about a longer phrase, which was iteratively and in real time, which required interaction between a human being and the computer. It wasn't about the computer only. And then finally, I just want to correct. Whitecheck never used the label kiosk 1682. Our expert never admitted kiosk 1682 is a POS terminal. When he was questioned about Whitecheck 92, he agreed that kiosk 16 runs a self-order application. But that didn't turn kiosk 16 into this combination server client 16 or kiosk server 82. My red light is on. So thank you very much. Thank you to both counsel. The case is submitted. That concludes today's arguments.